707 A.2d 395

Walter E. LOMAX

v.

WARDEN, MARYLAND CORRECTIONAL
TRAINING CENTER.

No. 83, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Jan. 7, 1998.

Reconsideration Denied Feb. 25, 1998.

Walter Lomax, Hagerstown, for Appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for Appellee.

Submitted before WENNER, HARRELL and SONNER, JJ.

HARRELL, Judge.

Mr. Walter E. Lomax, appellant, essentially asks us to determine whether a statement the Governor made at a press conference is more than merely "news." In this case, we answer no.

This appeal from the denial of what facially is styled as a habeas corpus petition focuses primarily on the nature, constitutionality, and effect of Governor Glendening's pronouncement during a press conference on 21 September 1995 that he would not approve parole for "violent offenders" sentenced to life imprisonment unless they were very old or terminally ill. Governor Glendening stated that "[i]f you murder or rape and you are sentenced to life in prison in Maryland, you *will* serve a life sentence." (Emphasis in original press release). In addition, the Governor stated that he had "directed the Parole Board not to even recommend—to not even send to [his] desk—a request for parole for murderers [sic] and rapists."

During the course of that press conference, the Governor publicly declined to approve the Maryland Parole Commission's parole recommendations for eight inmates sentenced to life imprisonment ("lifers"), including appellant here. Aggrieved, appellant subsequently filed a petition for habeas corpus relief in the Circuit Court for Baltimore City. The Honorable John C. Themelis of that court denied the petition

by written Memorandum and Order, dated 27 January 1997. Appellant, acting in proper person here as he did below, appeals from that denial.

Appellee suggests that we consider a threshold issue before deciding whether to reach the merits of the appeal. Appellee's query, which we have rephrased, is:

I. Whether appellant's petition for writ of habeas corpus provides a basis for relief.

In the event that we find no merit in the State's assertion, appellant raises the following issues for our consideration, which we have rephrased and reorganized as follows:

II. Whether the Governor's pronouncement deprived appellant of "meaningful parole consideration," in violation of Article 24 of the Maryland Declaration of Rights and the 14th Amendment of the U.S. Constitution.

III. Whether the Governor's pronouncement violates the ex post facto clauses of the Maryland Declaration of Rights, Article 17 and the U.S. Constitution Article I, section 10, clause 1.

IV. Whether the Governor's pronouncement violates the separation of powers doctrine set forth in Article 8 of the Maryland Declaration of Rights.

V. Whether the trial court, in issuing its memorandum and order denying appellant habeas corpus relief, insufficiently addressed the issues in appellant's petition, and whether the trial court failed to comply with Maryland Rule 15–311 (former Maryland Rule Z53).[1]

We find no merit in any of the parties' arguments. Accordingly, we affirm the judgment of the trial court.

---

1. Effective January 1, 1997, Maryland Rule 15–311 replaced Maryland Rule Z53. Appellant, in his brief, cited to the former rule number. This opinion will refer to the current rule number.

## PROCEDURAL HISTORY

On 14 January 1969, the Circuit Court for Baltimore City (Shirley B. Jones, J.), sentenced appellant in three criminal cases.[2] The court sentenced him to a life sentence in one case, and ten and twenty years respectively in the second and third cases. The court ordered appellant to serve the ten and twenty year sentences concurrent with the life sentence. In 1994, the Maryland Parole Commission recommended appellant for release on parole. On 21 September 1995, Governor Parris N. Glendening declined to approve that recommendation.

Appellant subsequently filed a petition for habeas corpus relief and then a supplement to the petition on 19 December 1996 and 30 January 1997, respectively. In his petition, appellant challenged the constitutionality of Governor Glendening's parole policy on federal and state due process and ex post facto grounds, and claimed a violation of the state separation of powers doctrine. On 27 January 1997, the circuit court denied appellant's petition. The court concluded that appellant had no constitutional right to parole and therefore had no constitutionally protected liberty interest in parole release. The court further held that parole is a purely executive function, vested exclusively in the Parole Commission, and therefore the court could not interfere with the Commission's decision to approve or deny parole.

Appellant filed a Motion to Vacate, Alter, Amend, or Revise the Final Order on 12 February 1997, which the court denied on 18 February 1997. Following that denial, appellant filed this appeal.

## STATUTORY HISTORY: MARYLAND PAROLE LAW

The Maryland Constitution, article 3, section 60 states that "[t]he General Assembly of Maryland shall have the power to provide by suitable general enactment ... (c) for the release

---

2. The appellate record before us is devoid of any specific information regarding these cases.

upon parole in whatever manner the General Assembly may prescribe, of convicts imprisoned under sentence for crimes." Pursuant to that authority, the General Assembly established the Maryland Parole Commission ("the Commission"). *See* Md.Code (1957, 1997 Repl.Vol.), Art. 41 § 4–502. The General Assembly gave the Commission, among other powers and duties, the "exclusive power" to "[a]uthorize the parole of individuals sentenced under the laws of this State to any penal or correctional institution, jail, or other place of confinement or detention within the State." Md.Code (1957, 1997 Repl. Vol., 1997 Supp.), Art. 41 § 4–504(a)(1). In addition, the statute grants the Commission the "exclusive power" to "[h]ear cases for parole release in which . . . [t]he inmate is serving a sentence of life imprisonment." *Id.* § 4–504(a)(3)(iii). Section 4–506 establishes multiple factors that each hearing examiner and Commission member must consider when determining whether an inmate is suitable for parole. These factors are:

(1) The circumstances surrounding the crime;

(2) The physical, mental, and moral qualification of the inmate eligible for parole;

(3) The progress of the inmate during his confinement . . . ;

(4) Whether or not there is a reasonable probability that the inmate, if released on parole, will remain at liberty without violating the law;

(5) Whether or not release on parole of the inmate is compatible with the welfare of society;

(6) An updated victim impact statement or recommendation . . . ;

(7) Any recommendation made by the sentencing judge at the time of sentencing;

(8) Any information that is presented to a Commission member at a meeting with the victim; and

(9) Any testimony presented to the Commission by the victim or the victim's designated representative. . . .

Of particular relevance to appellant's situation, the General Assembly has set forth additional provisions that specifically

address applications for parole of inmates serving life sentences. Section 4–504(b)(3) establishes that "[t]he Commission shall ... [r]eview and make recommendations to the Governor concerning applications for ... parole of a person under a sentence of life imprisonment...." In addition, in section 4–516(d), the General Assembly set forth its intent to give the Governor, rather than the Commission, the final authority to parole inmates sentenced to life imprisonment. Section 4–516(d) provides in relevant part:

> (d) *Prisoners serving life imprisonment.*—(1) ... [A] person who has been sentenced to life imprisonment is not eligible for parole consideration until the person has served 15 years or the equal of 15 years when considering the allowances for diminution of period of confinement.... (4) If eligible for parole under this subsection, an inmate serving a term of life imprisonment ... shall only be paroled with the approval of the Governor.

The Parole Commission's statutory authority and administrative policy regarding parole for inmates serving life sentences is further amplified in the Code of Maryland Regulations ("COMAR").[3] COMAR 12.08.01.17 § A(7)(a) and (g) state that inmates sentenced to life imprisonment are eligible for parole after 15, or the equivalent of 15, years and that "[i]f the Commission meeting en banc agrees that the prisoner should be granted parole, the Commission's recommendation for parole shall be forwarded to the Governor." In addition, COMAR 12.08.01.17 § A(6)(a) provides that "[t]he file of a prisoner sentenced to life imprisonment, or to a term of 25 years or more shall be administratively reviewed by the Commission after serving a term of 5 years of the sentence...." Pursuant to COMAR 12.08.01.17 § A(6)(f), an administrative review shall:

> (i) Be conducted by a randomly assigned Commission member or hearing examiner;

---

**3.** Section 4–504(f) authorizes the Commission, subject to the approval of the Secretary of Public Safety and Correctional Services, to adopt regulations governing the polices and activities of the Commission.

(ii) Ensure that the file contains the necessary documents;

(iii) Develop a chronological record of the case before the initial parole release hearing; and

(iv) Be sent to the prisoner and the institution where the prisoner is incarcerated.

With these statutory and administrative provisions in mind, we approach the matters placed before us.

## I.

Initially, we address the State's principal argument that appellant's petition offered no basis for habeas corpus relief. In addition, we address whether appellant has a right to appeal from the circuit court's denial of his application for a writ of habeas corpus, styled as such or as the substance of the petition may otherwise warrant.

## A.

Appellee argues that appellant, in his petition for habeas corpus, did not challenge the lawfulness of his current detention and, therefore, the petition does not lie. *See Hazel v. State*, 226 Md. 254, 264, 173 A.2d 187 (1961). In *Hazel*, the Court of Appeals stated that "[c]ontentions which go to the regularity, rather than to the validity of the proceedings, cannot be raised by habeas corpus...." *Id.* at 264, 173 A.2d 187. We need not decide here whether appellant's contentions go to the regularity or the validity of the proceedings that led to his detention. Instead, we follow the Court's reasoning in *Clark v. Warden of the Maryland House of Correction*, 213 Md. 641, 131 A.2d 396 (1957) where the Court " 'assume[d] without deciding' " that a petitioner, in a habeas corpus petition, could raise a constitutional challenge to the Board of Parole and Probation's exercise of discretion in a parole matter. *Id.* at 642, 131 A.2d 396. The Court stated: " 'A failure of the Board [of Parole and Probation] to exercise its discretion so as to grant credit does not deprive the petitioner of any constitutional right, even if we assume, without deciding, that such a point could be raised on *habeas corpus.*' " *Id.*

at 642, 131 A.2d 396 (citation omitted); *accord Carolina v. Director of the Department of Parole and Probation*, 217 Md. 379, 380–81, 142 A.2d 602 (1958). Similarly, because, as we discuss below, we find no constitutional defects in the Governor's pronouncement and its effect on the Parole Commission's exercise of discretion, we assume, without deciding, that appellant could raise these constitutional challenges in a habeas corpus petition.[4]

## B.

■■■■ In addition, although not asserted explicitly by appellee as a ground for dismissal of this appeal, we consider *nostra sponte* whether this appeal is authorized. We may do so as this potential issue is jurisdictional in nature. *Biro v. Schombert*, 285 Md. 290, 293, 402 A.2d 71 (1979). Ordinarily, no right of appeal exists from the denial of an application for a writ of habeas corpus. But when, as here, an ertswhile appellant does not base his complaint of unlawful detention on a challenge to the underlying illegality of the conviction or sentence he is serving, the Post Conviction Procedure Act (PCPA), article 27, section 645A(e) of the Maryland Code, authorizes such an appeal. *See Gluckstern v. Sutton*, 319 Md. 634, 656–63, 574 A.2d 898 (1990). We explain how we arrived at this conclusion.

We first consider the right of appeal from a final order in a habeas corpus case and note that such an appeal "may be taken ... only where specifically authorized by statute." *Id.* at 652, 574 A.2d 898. Two statutes authorize such appeals.

---

4. We note that the State may be correct in its assertion that the appellant's styling of a habeas corpus petition was not the best modus operandi by which to challenge the constitutionality of the Governor's pronouncement. *See Maryland House of Correction v. Merrill Fields*, 348 Md. 245, 260–61, 703 A.2d 167 (1997). Appellant, rather than challenging the lawfulness of his detention per se, seems to seek a declaratory judgment regarding the constitutionality of the Governor's pronouncement. In light of our conclusion that we can assume, without deciding, that a basis for the habeas corpus petition lies, the actual form of appellant's complaint does not affect the substance of our decision on the constitutionality of the Governor's pronouncement.

Article 41, section 2–210 of the Maryland Code (1957, 1997 Repl.Vol.) authorizes appeals to this Court if the "application for a writ of habeas corpus after an extradition hearing ... is denied by the trial court." Section 3–707(a) of the Courts & Judicial Proceedings (C.J.) Article of the Maryland Code (1974, 1995 Repl.Vol., 1997 Supp.) authorizes appeals to this Court "[i]f a judge refuses to issue a writ of habeas corpus sought for the purpose of determining the right to bail, or if a judge sets bail claimed to be excessive prior to trial or after conviction, but prior to final judgment, ..." Because Mr. Lomax did not apply for a writ of habeas corpus following an extradition hearing, and because his application does not relate to his right to bail, neither statute authorizes this appeal.

Two additional statutes affect the right to appeal in habeas corpus cases. *See Gluckstern*, 319 Md. at 652–53, 574 A.2d 898. C.J. Section 3–706 authorizes an appeal "when a person is released or discharged 'on the ground that the law under which the person was convicted is unconstitutional.'" *Gluckstern*, 319 Md. at 653, 574 A.2d 898 (quoting § 3–706(a)). Here, appellant does not challenge the statutory scheme underlying his conviction; instead, he challenges the effect of the Governor's pronouncement on the statutory and administrative scheme underlying his parole eligibility. Therefore, section 3–706 does not authorize this appeal.

The PCPA also affects the right to appeal from a denial of habeas corpus by limiting the availability of such an appeal. In the PCPA, the legislature set forth an avenue, in addition to habeas corpus, for convicted persons to challenge the validity of their convictions or sentences. *See Barr v. State*, 101 Md.App. 681, 687, 647 A.2d 1293 (1994). Under section 645A(a):

Any person convicted of a crime and either incarcerated under sentence of death or imprisonment or on parole or probation, including any person confined or on parole or probation as a result of a proceeding before the District Court who claims that the sentence or judgment was imposed in violation of the constitution of the United States or

the Constitution or laws of this State, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the sentence is otherwise subject to collateral attack upon any ground of alleged error which would otherwise be available under a writ of habeas corpus, writ of coram nobis, or other common-law or statutory remedy, may institute a proceeding to ... set aside or correct the sentence.

This Court stated that the "purpose behind § 645A ... was to consolidate into one statutory procedure all the remedies previously available for collaterally challenging the validity of a criminal conviction or sentence." *Barr*, 101 Md.App. at 687, 647 A.2d 1293.

Although section 645A did not explicitly prohibit alternative procedures, it did limit the right to seek appellate review from a denial of habeas corpus. *See id.* at 685, 647 A.2d 1293. Section 645A(e) prohibits

appeals to the Court of Appeals or the Court of Special Appeals in habeas corpus or coram nobis cases, or from other common-law or statutory remedies which have heretofore been available for challenging the validity of incarceration under sentence of death or imprisonment ... except appeals in such cases pending in the Court of Appeals on June 1, 1958. ...

In *Barr*, we noted that although the PCPA, as originally enacted in 1958, gave convicted persons an additional avenue of relief, "[t]he *quid pro quo* for that additional remedy, including, as we have indicated, the right to seek appellate review if relief was denied, was the loss of any right to seek appellate review in connection with the preexisting alternative relief." *Barr*, 101 Md.App. at 685, 647 A.2d 1293. In 1965, the legislature amended section 645A(e), to include the following exceptions to this loss of an avenue of potential appellate relief:

[N]othing in this subtitle shall operate to bar an appeal to the Court of Special Appeals (1) in a habeas corpus proceeding instituted under § 2–210 of Article 41 of this Code or (2)

in any other proceeding in which a writ of habeas corpus is sought for any purpose other than to challenge the legality of a conviction of a crime or sentence of death or imprisonment therefor, including confinement as a result of a proceeding under Article 31B of this Code.

Consequently, the legislature's "abrogation of the right to seek appellate review from the denial of habeas corpus applied only where the writ was sought to challenge the legality of a conviction or sentence of death or imprisonment." *Barr*, 101 Md.App. at 685, 647 A.2d 1293.

In the case at hand, appellant bases his complaint of unlawful detention on the effect of alleged constitutional defects in the Governor's pronouncement regarding parole for inmates sentenced to life imprisonment, rather than on a challenge to the legality of his conviction or the original imposition of his prison sentence. Therefore, because appellant seeks a "writ of habeas corpus ... for a[ ] purpose other than to challenge the legality of a conviction of a crime or sentence of death or imprisonment therefor ... [,]" section 645A(e) provides appellant with a basis for this appeal.

## II.

Appellant argues first that the Governor's pronouncement deprives him of a liberty interest in "meaningful parole consideration" in violation of his right to procedural due process under article 24 of the Maryland Declaration of Rights and the 14th Amendment of the U.S. Constitution. The State argues that because the Governor denied appellant's parole recommendation on 21 September 1995, after receiving the Commission's recommendation, the pronouncement did not affect appellant's individual parole consideration. We agree. Because the Governor's pronouncement came after the Commission's consideration of appellant, appellant clearly received meaningful, individualized parole consideration from the Commission. Appellant further argues, however, that the pronouncement deprives him of his ongoing right to meaningful parole consideration in the future because the Governor effectively has

removed any possibility of parole (presumably unless and until the Governor modifies, eliminates, or ignores his announced policy, or the policy is otherwise abrogated by his successor). Thus, we will address this due process argument.

Article 24 of the Maryland Declaration of Rights provides "[t]hat no man ought to be ... deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Before we can address whether the Governor's pronouncement deprived appellant of a liberty interest, we must first determine whether appellant has a constitutional liberty interest in meaningful parole consideration. In *Patuxent Institution Board of Review v. Hancock*, 329 Md. 556, 620 A.2d 917 (1993), the Maryland Court of Appeals addressed this issue:

> The fact that a parole system exists does not, in and of itself, give rise to a constitutionally protected liberty interest in parole release. On the other hand, a statute, administrative rules or regulations, or accepted practices may provide such an interest. Whatever its source, in order that parole be given effect, there must be "justifiable reliance on maintaining [a] conditional freedom" instead of a "mere anticipation or hope of freedom." This is so because there is a critical and substantial difference between being deprived of liberty one has, as in parole, and being denied a conditional liberty that one desires, ... "[T]here is a human difference between losing what one has and not getting what one wants."

*Id.* at 583, 620 A.2d 917 (citations omitted).

The Court drew a distinction between the situation of an inmate receiving a recommendation for parole, and an inmate receiving an actual Order of Parole and a copy of a parole agreement. *Id.* at 584, 620 A.2d 917. The Court noted that where the Commission's recommendation of parole "did not automatically become an order of parole ... that action [the recommendation] did not give the respondent a liberty interest." *Id.* In contrast, the Court stated, after the Board of Review "served the respondent with an Order of Parole and a

copy of a parole agreement, the Board of Review effected the respondent's parole and, in the process, created in him a liberty interest." *Id.* The Court continued, "[i]t is the order of parole, which, by its terms, was for one year, from which the liberty interest flowed." *Id.* at 584–85, 620 A.2d 917.

Appellant argues that the Governor's pronouncement violates his due process right to a "meaningful parole consideration hearing," where he has a reasonable expectation that the Commission currently would recommend him for parole, or may do so in the future. Appellant's expectation of a parole recommendation is nothing more than a "mere anticipation or hope of freedom." *See id.* at 583, 620 A.2d 917. The Court of Appeals has held that a desire for a parole recommendation, or even a parole recommendation itself, does not create a constitutionally protected liberty interest in parole release. *Id.* at 583–84, 620 A.2d 917. Even if appellant receives a recommendation, the recommendation is still subject to the approval of the Governor. *See* Md.Code, Art. 41 § 4–516(d)(4). A constitutionally-invigorated liberty interest, cloaked with due process protections, arises only after the Governor approves such a recommendation, and the Commission [5] serves an inmate with an Order of Parole.

Appellant contends that language in article 41, section 4–516, and language in COMAR 12.08.01.17 § A(3)(a) and 12.08.01.18 § A create an inmate's liberty interest in parole. He bases his argument on the U.S. Supreme Court's decision in *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), where the Court held that

---

**5.** In *Patuxent Institution Board of Review v. Hancock,* 329 Md. 556, 620 A.2d 917 (1993), the inmate was incarcerated in Patuxent Institution, therefore, the Board of Review had the power to make the appropriate determinations regarding parole. *See id.* at 583–84, 620 A.2d 917; Md.Code (1957, 1997 Repl.Vol., 1997 Supp.), art. 31B § 11. In our case, however, appellant was not incarcerated in Patuxent Institution, and therefore, the Parole Commission, pursuant to article 41, section 4–504, has the power to make parole determinations. Thus, under our circumstances, a liberty interest would only arise after the Commission, rather than the Board of Review, serves the inmate with an Order of Parole.

mandatory language in a state parole statute may create an "expectancy of release [which] . . . is entitled to some measure of constitutional protection." *Id.* at 12, 99 S.Ct. at 2106. There, the statute stated: "Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred. . . ." *Id.* at 11, 99 S.Ct. at 2106. The Court emphasized that the state statute at issue "has unique structure and language and thus whether any other state statute provides a protectable entitlement must be decided on a case-by-case basis." *Id.* at 12, 99 S.Ct. at 2106. In this case, appellant argues that article 41, section 4–516 mandates parole consideration and thus gives rise a liberty interest in meaningful consideration. We disagree.

First, appellant incorrectly cites section 4–516. Appellant claims that section 4–516(b)(c) includes mandatory language: "[a person serving life imprisonment] *shall* be considered for parole when he has served 15 years minus diminution credits." The correct language from section 4–516(d)(1) reads "a person who has been sentenced to life imprisonment is not eligible for parole consideration until that person has served 15 years or the equal of 15 years when considering the allowances for diminution of period of confinement. . . ." The statute contains no mandatory language. Therefore, any argument that the statute creates a due process right to a hearing is inapposite.

Second, appellant cites COMAR 12.08.01.17 § A(3)(a), which refers to victim requests for public parole hearings, not to prisoners' rights to parole hearings. In addition, COMAR 12.08.01.18 § A refers to the factors the Commission considers when determining a person's suitability for release on parole. The applicable COMAR regulations regarding prisoners serving life sentences are found in COMAR 12.08.01.17 § A(7), which merely mentions eligibility for parole, but does not confer a right to a parole hearing or to parole itself.

■ Under the Maryland statutory scheme, until the Governor approves a parole recommendation for a lifer, and the

court serves the inmate with an Order for Parole, the inmate has no due process right to parole or a parole hearing, and thus, has no liberty interest in meaningful parole consideration. Because appellant does not have a liberty interest in meaningful parole consideration, the Governor's pronouncement does not offend any procedural due process concerns.[6]

## III.

Appellant next argues that the Governor's pronouncement violates the ex post facto clauses of the Maryland Declaration of Rights and the U.S. Constitution because it affects the duration of his confinement, enhances his sentence, and effectively changes his sentence from parole eligible after 15 years to parole eligible after 15 years plus old age or terminal illness. Before we address appellant's challenge, we must first determine whether the Governor's pronouncement constitutes a "law" for the purposes of the ex post facto clause.

Both the U.S. Constitution and the Maryland Declaration of Rights prohibit ex post facto laws. Article 17 of the Maryland Declaration of Rights states "[t]hat retrospective Laws, punishing acts committed before the existence of such Laws, and by them only declared criminal, are oppressive, unjust and incompatible with liberty; wherefore no *ex post facto* Law ought to be made, nor any retrospective oath or restriction be imposed, or required." Article I, section 10, clause 1 of the U.S. Constitution prohibits States from entering into any ex post facto law.[7] Because the language of the ex post facto

---

6. It is perhaps worth noting, in passing, that in the instant case, we address the exercise of executive, rather than judicial, discretion. An examination of the requisites and limitations on the exercise of judicial discretion ordinarily depends on vastly different analytical and jurisdictional wellsprings than the Governor's prerogative as granted by the legislature in the case *sub judice*. *See, e.g., Williamson v. State*, 284 Md. 212, 214–15, 395 A.2d 496 (1979) (authority of trial judge to suspend all or part of a mandatory life sentence); *Austin v. State*, 90 Md.App. 254, 262, 600 A.2d 1142 (authority of appellate court to reach or decline to reach an unpreserved instructional error argument).

7. Maryland law views the ex post facto prohibition in the Maryland Declaration of Rights as having the same meaning as the analogue

prohibition clearly states that the clause only applies to "laws," in virtually all scenarios the prohibition " 'is directed to the legislative branch of government rather than to the other branches.' " *United States v. Ellen,* 961 F.2d 462, 465 (4th Cir.1992) (quoting *Prater v. United States Parole Comm'n,* 802 F.2d 948, 951 (7th Cir.1986) (en banc)).

A.

In the case at hand, the Governor's pronouncement, a public statement at a news conference, obviously does not constitute a legislatively enacted law. Recognizing this, appellant instead argues that the Governor's pronouncement is tantamount to an executive order, with the "force of law," and therefore the ex post facto prohibitions apply to the pronouncement.

Both the Maryland Constitution and statutory law authorize the Governor to issue executive orders. Article II, section 24 of the Maryland Constitution provides:

The Governor may make changes in the organization of the Executive Branch of the State Government.... Where these changes are inconsistent with existing law, or create new governmental programs they shall be set forth in executive orders in statutory form which shall be submitted to the General Assembly.... An executive order that has been submitted shall become effective and have the *force of law* on the date designated in the Order unless specifically disapproved ... by a resolution of disapproval concurred in by a majority vote of all members of either House of the General Assembly.

*Id.* (emphasis added). In addition, Maryland Code, section 3–401 of the State Government Article defines and authorizes executive orders. Section 3–401 states:

---

prohibition in the U.S. Constitution. *See Frost v. State,* 336 Md. 125, 136, 647 A.2d 106 (1994).

In this subtitle, "executive order" means an order or an amendment or rescission of an order that, over the signature of the Governor:

(1) proclaims or ends a state of emergency or exercises the authority of the Governor during the emergency, under Article 41, § 2–101 of the Code;

(2) adopts guidelines, rules of conduct, or rules of procedure for:

(i) State employees;

(ii) units of the State government; or

(iii) persons who are under the jurisdiction of those employees or units or who deal with them;

(3) establishes a unit, including an advisory unit, study unit, or task force; or

(4) changes the organization of the Executive Branch of the State government.

Section 3–404 mandates that "[u]pon issuance of an executive order, the Governor shall deliver the original or a certified copy of it to the Secretary of State." Section 3–406 requires the publisher of the Code of Public General Laws to "codify each executive order that is issued in statutory form under Article II, § 24 of the Maryland Constitution," and requires the Director of the Department of Legislative Reference to publish all other executive orders.

■ The Governor's pronouncement meets none of the constitutional or statutory requirements for an executive order. The Governor did not submit his statement to the General Assembly for approval, therefore it is not a constitutionally authorized executive order. Furthermore, he never wrote, signed, or delivered his statement to the Secretary of State, therefore it does not meet the requirements of a statutory executive order pursuant to sections 3–401 and 3–404 of the State Government Article. Thus, appellant's argument that the pronouncement is an executive order with the "force and effect of law" fails. Consequently, we need not decide here

whether the ex post facto prohibitions apply to executive orders.[8]

### B.

■ Notwithstanding the fact that the pronouncement does not constitute an executive order, under certain circumstances, nonlegislatively promulgated rules or regulations may have the force of law, and thus implicate the prohibitions of the ex post facto clause. This determination turns on whether the court considers the rule or regulation to be legislative or interpretative. *See, e.g., Ellen,* 961 F.2d at 465–66; *Faruq v. Herndon,* 831 F.Supp. 1262, 1279–80 (D.Md.1993), *aff'd sub nom. Briscoe v. Herndon,* 56 F.3d 60 (4th Cir.1995).

In *Ellen,* the U.S. Court of Appeals for the Fourth Circuit considered the actions of administrative agencies, and concluded that legislative rules, or those rules promulgated pursuant to an agency's rulemaking power, are subject to the ex post facto prohibition. *See Ellen,* 961 F.2d at 465. In contrast, the court concluded that interpretative rules, or mere "statements of enforcement policy," are not subject to the prohibition. *Id.* The court set forth the following reasons for this distinction: " 'When Congress has delegated to an agency the authority to make a rule instead of making the rule itself, the resulting administrative rule is an extension of the statute for purposes of the [C]lause.' " *Id.* (quoting *Rodriguez v. United States Parole Comm'n,* 594 F.2d 170, 173 (7th Cir.1979)). Thus, "[t]he reason for applying the Clause to such legislative rules is straightforward: Congress 'should not be allowed to do indirectly what it is forbidden to do directly.' " *Ellen,* 961 F.2d at 465 (quoting *Prater,* 802 F.2d at 954). The ex post

---

8. We note parenthetically that executive orders promulgated pursuant to Article II, section 24 of the Maryland Constitution have the "force of law." *See* 64 Op. Att'y Gen. 180 (1979). In addition, we note that statutorily authorized executive orders, "as long as they are not inconsistent with existing statutes and are within the scope contemplated by the specific enabling legislation, are the equivalent of statutes, and have the force of law." *Id.*

facto prohibition does not apply, however, when an agency promulgates an interpretative rule because

> "[i]nterpretative rules simply state what the administrative agency thinks the statute means, and only 'remind' affected parties of existing duties." Unlike legislative rules, which "ha[ve] the force of law," interpretative rules "are statements of enforcement policy. They are ... 'merely guides, and not laws: guides may be discarded where circumstances require; laws may not.'"

*Ellen,* 961 F.2d at 465 (citations omitted).

Maryland law recognizes this distinction between legislative and interpretative rules. In *Gluckstern,* the Maryland Court of Appeals contrasted a statutory enactment affecting an inmate's ability to obtain parole with the U.S. Parole Commission's decision to change its own discretionary parole guidelines. *Gluckstern,* 319 Md. at 671–72, 574 A.2d 898. The Court held that a statutory addition to Maryland Code, article 31B, section 11(b)(5), mandating that "'[a]n eligible person who is serving a term of life imprisonment shall only be paroled with the approval of the Governor,'"[9] violated the ex post facto prohibition. *Id.* at 643, 669, 574 A.2d 898 (citation omitted). In contrast, the Court noted that the ex post facto prohibition does not apply to federal parole guidelines that "'do not have the force and effect of law' but are merely 'polic[ies] ... that show how agency discretion is likely to be exercised.'"[10] *Id.* at 672, 574 A.2d 898 (quoting *Dufresne v. Baer,* 744 F.2d 1543, 1550 (11th Cir.1984)).

---

**9.** The Court noted that similar language was also added to what was then Maryland Code, article 41, section 4–516(b)(4) and is now article 41, section 4–516(d)(4).

**10.** We note that courts do not always consider the federal parole guidelines as "mere policies" having no "force and effect of law." *See, e.g., Rodriguez v. United States Parole Comm'n,* 594 F.2d 170, 173 (7th Cir.1979) (holding that where the U.S. Parole Commission adopted a regulation pursuant to its statutory rulemaking power, such regulations "have the force and effect of law"). The particular characterization of the U.S. Parole Commission guidelines is relevant to our discussion only insofar as these cases demonstrate that, for the purposes of the ex

In this case, the Governor's pronouncement is just that, a pronouncement. Neither the Governor nor any executive agency promulgated a rule or regulation in response to this pronouncement. The Governor merely stated how he intended to execute his statutory right to approve or disapprove parole for inmates sentenced to life imprisonment.[11] As noted in *Prater*, "[i]f the law is unchanged and no legislative regulations are promulgated, a mere change in enforcement methods, priorities, or policies, written or unwritten . . . does not activate the prohibition against ex post facto laws." *Prater*, 802 F.2d at 954.

Instead, like the *Ellen* court's definition of an interpretative rule, the Governor's statement is merely a flexible "statement of policy." *See Ellen*, 961 F.2d at 465. The Governor's statement is flexible because it does not bind him, and he can change his mind regarding his approval policy at any time. *See id.* ("guides may be discarded where circumstances require; laws may not"). Furthermore, the pronouncement has no binding effect on the duties of the Commission. The pronouncement does not, indeed cannot, affect the Commission's responsibilities pursuant to Md.Code, article 41, sections 4–501 et seq. and COMAR 12.08.01.17 § A. These provisions set forth the Commission's powers and duties, including administrative review of the files of prisoners sentenced to life imprisonment, and specific suitability factors the Commission must consider at a parole hearing. *See* Md.Code, Art. 41 § 4–506; COMAR 12.08.01.17 § A(6).[12] While what action the Governor intends to take with respect to any

---

post facto prohibition, courts treat rules with the force and effect of law differently than mere guidelines.

**11.** We note that the Governor did not state that he will not execute the statutory provisions regarding parole for lifers. *See* Md.Code, Art. 41, § 4–516(d). Instead, he merely set forth his policy regarding how he plans to exercise his discretion to approve or disprove parole in those circumstances.

**12.** As noted earlier neither the statutory provisions, nor the administrative regulations, mandate a parole hearing for lifers. *See* Md.Code, art. 41 § 4–516(d).

Commission recommendation of parole for a lifer not coming within the terms of the Governor's pronouncement may engender a less than full sense of job satisfaction on the part of a Commission member, the Commission must continue to do what the law directs it to do. Thus, to the extent that the portion of the Governor's pronouncement directing the "Parole Board not to even recommend—not to even send to [his] desk—a request for parole for murderers [sic] or rapists," suggests that the Commission ignore its legally prescribed duties regarding parole recommendations for lifers, the Commission must ignore that portion of the pronouncement.

■ Because we find that the Governor's pronouncement constitutes at most an interpretative rule, having no "force and effect of law," the ex post facto prohibition does not apply.[13]

## IV.

Appellant next argues that the Governor's pronouncement violates the separation of powers doctrine by usurping the legislatively granted authority of the Commission to make suitability determinations regarding parole. Article 8 of the Maryland Declaration of Rights defines this doctrine: "That the Legislative, Executive, and Judicial powers of Government ought to be forever separate and distinct from each other; and

---

**13.** We note that in *Knox v. Lanham*, 895 F.Supp. 750 (D.Md.1995), *aff'd, without opinion*, 76 F.3d 377 (1996), the U.S. District Court for the District of Maryland, endeavoring to ascertain and apply Maryland law, found that an "unwritten policy of the Parole Commission requiring inmates to be on active work release and family leaves before receiving a parole recommendation constitutes a 'law' for ex post facto purposes." *Id.* at 756. There, the court considered a summary judgment record attesting to the actual effect of the written policy. *Id.* That record, in the court's view, established that the unwritten policy "at least de facto, bec[ame] written in stone" and "entirely inflexible in its operation." *Id.* In the case at hand, we have no such record before us. Even if we did, we note that unwritten policies, with no actual legally binding effect, do not constitute legislative rules for purposes of applying the ex post facto clause. To conclude otherwise would subject every administrative or executive statement of policy to the rigors of a constitutional test. The ex post facto clause does not reach that far.

no person exercising the functions of one said Departments shall assume or discharge the duties of any other." In *O'Hara v. Kovens,* 92 Md.App. 9, 606 A.2d 286 (1992), this Court explained the purpose of the separation of powers provision:

"The evident purpose ... is to parcel out and separate the powers of government, and to confide particular classes of them to particular branches of the supreme authority. That is to say, such of them as are judicial in their character to the judiciary; such as are legislative to the legislature, and such as are executive in their nature to the executive. Within the particular limits assigned to each, they are supreme and uncontrollable."

*Id.* at 21–22, 606 A.2d 286 (emphasis omitted) (quoting *Wright v. Wright's Lessee,* 2 Md. 429, 452 (1852)).

Maryland statutory and administrative law provide the Parole Commission, an executive agency, with exclusive jurisdiction over parole. In *DeLeon v. State,* 102 Md.App. 58, 648 A.2d 1053 (1994), this Court considered the separation of powers issue in the context of parole and stated "[p]arole ... is a purely executive function, the exercise of which must be, and by statute is, committed to an executive agency—the Maryland Parole Commission." *Id.* at 73, 648 A.2d 1053 (quoting *Simms v. State,* 65 Md.App. 685, 689–90, 501 A.2d 1338 (1986)); *see also Yoswick v. State,* 347 Md. 228, 241, 700 A.2d 251 (1997) ("[p]arole eligibility falls within the province of the Parole Commission and the executive branch").

Furthermore, the statutes and regulations also provide the Governor, rather than the Commission, the final authority to parole lifers. Section 4–516(d)(4) states that "an inmate serving a term of life imprisonment ... shall only be paroled with the approval of the Governor," and COMAR 12.08.01.17 § A(7)(g) indicates that after the Commission agrees that "the [lifer] should be granted parole, the Commission's recommendation for parole shall be forwarded to the Governor."

Based on the fact that under Maryland law, parole is purely an executive function and that, in the case of lifers, the

Governor has the final authority over parole release, appellant's argument that the Governor usurped the legislatively granted authority of the Parole Commission fails. Here, one branch of government did not usurp the power of another branch of government. *See O'Hara,* 92 Md.App. at 21, 606 A.2d 286. The legislature, in section 4–516(d), gave the Governor the discretion to approve or disprove parole for lifers, and on 21 September 1995, the Governor simply stated how he planned to implement his statutory right. Thus, no separation of powers issue exists.

## V.

 Lastly, appellant argues that the trial court, in issuing its memorandum and order denying him habeas corpus relief, insufficiently addressed the due process and separation of powers issues in appellant's petition and failed to comply with Maryland Rule 15–311. Rule 15–311 provides: "The judge to whom the petition is made or referred shall dictate into the record or prepare and file a memorandum setting forth the grounds of the petition, the questions involved, and the reasons for the action taken."

In this case, on 27 January 1997, the circuit court judge filed a two and a half page Memorandum and Order denying appellant's habeas petition. The Memorandum set forth appellant's allegations and the court's reasons for denying the petition. The court specifically referred to the due process issue, stating that "the fact that a parole system exists does not, in and of itself, give rise to a constitutionally protected interest in parole release." In addition, the court also set forth the appropriate provisions of the Maryland Code and the Declaration of Rights regarding separation of powers and discussed the executive nature of the administration of the parole system. Thus, the court complied with Rule 15–311 and sufficiently addressed the due process and separation of powers issues in appellant's petition.[14]

---

14. We note that appellant did not challenge in this appeal the sufficiency of the memorandum with respect to the ex post facto issue. The

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

circuit court's memorandum did not address specifically the ex post facto issue. The court, however, did address the executive nature of parole determinations and the fact there is no inherent constitutional right to parole. Even if we were to determine that this discussion was insufficient, we note that "as the record before us shows that petitioner is lawfully imprisoned, the reason for the court's action is apparent and it is unnecessary to remand the case." *State v. Warden,* 190 Md. 765, 766–67, 59 A.2d 791 (1948); *cf. Webster v. Warden,* 211 Md. 632, 634, 126 A.2d 613 (1956) ("We think the petition on its face properly raised questions of constitutional right that should have been resolved by the judge to whom the petition was referred.").

Though it ordinarily would go without saying, we note that we have decided only those issues plainly presented by appellant on the record before us. We obviously do not consider any other direct or collateral challenges to the Governor's pronouncement, be they substantively or procedurally different than those before us, as otherwise may be conceived by the mind of Man.