741 A.2d 476

**Walter E. LOMAX**

v.

**WARDEN, MARYLAND CORRECTIONAL TRAINING CENTER.**

No. 45, Sept. Term, 1998.

Court of Appeals of Maryland.

Nov. 9, 1999.

Reconsideration Denied Dec. 15, 1999.

570

David C. Wright, Executive Director (Stephen Z. Meehan, Principal Counsel; Joseph B. Tetrault, Chief Staff Counsel, Prisoner Rights Information System of Maryland, Inc., all on brief), Chestertown, for petitioner.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, * RAKER, WILNER and CATHELL, JJ.

ELDRIDGE, Judge.

The Maryland Parole Commission has the statutory duty to "review and make recommendations to the Governor: (i) concerning parole of an inmate under a sentence of life

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

imprisonment...." Maryland Code (1999), § 7–206(3) of the Correctional Services Article. With certain exceptions, "an inmate who has been sentenced to life imprisonment is not eligible for parole consideration until the inmate has served 15 years or the equivalent of 15 years considering the allowances for diminution of the inmate's term of confinement ...." § 7–301(d)(1) of the Correctional Services Article. Moreover, an inmate serving a term of life imprisonment, who is eligible for parole, "may only be paroled with the approval of the Governor." § 7–301(d)(4) of the Correctional Services Article.[1]

The principal issue in this habeas corpus case is whether the Governor's announcement in 1995 of his policy concerning approval or disapproval of parole for inmates serving life imprisonment terms constitutes an ex post facto law in violation of Article 1, § 10, cl. 1, of the Constitution of the United States and Article 17 of the Maryland Declaration of Rights. In addition, the petitioner has challenged the Governor's action on other grounds, and the respondent has questioned the propriety of adjudicating the issues in a habeas corpus proceeding.

I.

On January 14, 1969, the petitioner Walter Lomax was convicted of first degree murder and sentenced to life imprisonment. At the same time he was convicted of two counts of robbery and sentenced to imprisonment for terms of 10 years and 20 years to run concurrently with the life sentence. The offenses occurred in 1967.

Since his imprisonment, Lomax has been considered for parole at nine separate parole hearings. The Maryland Parole Commission recommended Lomax for parole in 1989, but then

---

1. The above-cited statutory provisions were previously codified as Code (1957, 1997 Repl.Vol.), Art. 41, §§ 4–504(b)(3), 4–516(d)(1), and 4–516(d)(4). There was no substantive change in these specific provisions upon their 1999 recodification as part of the Correctional Services Article. In fact, the substance of these particular provisions has remained the same since 1953. *See* Ch. 625 of the Acts of 1953.

Governor Schaefer refused to approve the parole. The Parole Commission again recommended Lomax for parole in 1994. Governor Glendening rejected this recommendation on September 21, 1995. At the same time, the Governor rejected the Commission's recommendations that seven other inmates serving life imprisonment terms should be paroled.

In denying parole to Lomax and seven other inmates on September 21, 1995, Governor Glendening announced that he would not approve parole for any inmates sentenced to life imprisonment unless they were very old or terminally ill. The Governor's announcement went on to state that he had "directed the Parole [Commission] not to even recommend—to not even send to [his] desk—a request for parole for murderers and rapists."

Lomax subsequently filed in the Circuit Court for Baltimore City a petition for a writ of habeas corpus, asserting that the Governor's action had the effect of changing his life sentence with eligibility for parole to a life sentence without the possibility of parole, that this change violated the ex post facto clauses of the federal and state constitutions, and that the change resulted in Lomax being illegally imprisoned. Lomax further claimed that the actions of the Governor, and the alleged actions of the Parole Commission in no longer submitting parole recommendations of inmates serving life imprisonment to the Governor, violated the statutory provisions dealing with the parole of those sentenced to life imprisonment.

The circuit court denied the habeas corpus petition, and Lomax appealed to the Court of Special Appeals. The intermediate appellate court, in an extensive opinion, rejected Lomax's various arguments and affirmed the circuit court's judgment. *Lomax v. Warden,* 120 Md.App. 314, 707 A.2d 395 (1998). Thereafter this Court granted both Lomax's petition for a writ of certiorari and the Warden's cross petition for a writ of certiorari. *Lomax v. Warden,* 350 Md. 280, 711 A.2d 871 (1998).

## II.

 We shall first address the Warden's argument, presented in the cross petition for a writ of certiorari, that a habeas corpus proceeding is not an appropriate vehicle for challenging the Governor's action because the petitioner "does not challenge the lawfulness of the underlying conviction and detention." (Respondent's brief at 24).·

As this Court explained in *Gluckstern v. Sutton*, 319 Md. 634, 663, 574 A.2d 898, 912, *cert. denied*, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 331 (1990), "earlier [Maryland] cases may have taken a narrow view of the relief available in a habeas corpus proceeding, [but] more recent cases hold that the judge is entitled to tailor relief as justice may require." In the *Gluckstern* case, the respondent Sutton had been convicted of first degree murder committed in 1974, had been adjudicated a "defective delinquent" within the meaning of certain former statutory provisions, and had been committed to the Patuxent Institution for an indeterminate period pursuant to those former statutory provisions. At the time of Sutton's 1974 offense, and when he was committed to the Patuxent Institution, the Institutional Board of Review of the Patuxent Institution was authorized to parole an inmate in Sutton's position, and there was no requirement that the Board's decision in favor of parole be approved by the Governor. Statutes enacted in 1977 and 1982, however, had the effect of changing Sutton's indeterminate sentence to a sentence of life imprisonment and of requiring the Governor's approval before one in Sutton's position could be paroled by the Institutional Board of Review. Both in 1984 and in 1986 the Institutional Board of Review decided in favor of paroling Sutton, but on each occasion the Governor refused to approve the parole.

Subsequently Sutton filed a petition for a writ of habeas corpus, and the circuit court held that, under the ex post facto clauses of the federal and state constitutions, the requirement of gubernatorial approval could not be applied to Sutton. The circuit court ordered the Institutional Board of Review to hold

a new parole hearing for Sutton and to determine, without gubernatorial interference, whether Sutton should be paroled. In affirming the circuit court's order in *Gluckstern,* this Court held that the requirement of gubernatorial approval could not be applied to Sutton because of the ex post facto clauses, and that "the ordering of a new parole hearing was an available type of relief in a habeas corpus case." 319 Md. at 664, 574 A.2d at 912. *See Garrison v. State,* 350 Md. 128, 138–143, 711 A.2d 170, 175–177 (1998); *Beshears v. Wickes,* 349 Md. 1, 5, 706 A.2d 608, 610 (1998); *Patuxent v. Hancock,* 329 Md. 556, 620 A.2d 917 (1993).

Consequently, a habeas corpus proceeding may be maintained even though the petitioner, if successful, may not be entitled to immediate release from imprisonment or to invalidation of the basis for the petitioner's detention. Habeas corpus actions may be maintained where the relief available is the ordering of a proceeding or hearing which may lead to the petitioner's release. In the present case, if the Governor's challenged action were held to be invalid, there is a possibility that Lomax would be released on parole. Under *Gluckstern* and other recent decisions, Lomax was entitled to bring a habeas corpus proceeding.

### III.

Article 17 of the Maryland Declaration of Rights states:

"That retrospective Laws, punishing acts committed before the existence of such Laws, and by them only declared criminal, are oppressive, unjust and incompatible with liberty; wherefore, no *ex post facto* Law ought to be made...."

Article 1, § 10, cl. 1, of the Constitution of the United States provides that "No State shall ... pass any ... ex post facto Law...." The ex post facto prohibition applies "to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30, 38 (1990). The Supreme Court in *Collins v. Youngblood,* 497 U.S. at 42, 110 S.Ct. at 2719, 111 L.Ed.2d at 38–39, went on to quote Justice Chase's opinion in *Calder v.*

*Bull,* 3 Dall. 386, 390, 1 L.Ed. 648, 650 (1798), concerning what is prohibited by the federal ex post facto clause:

> " '1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment,* and inflicts a *greater punishment,* than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence,* and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.'* . . . (Emphasis in original)."

*See also Gluckstern v. Sutton, supra,* 319 Md. at 664–672, 574 A.2d at 912–917, and cases there cited.

■ Under the plain language of the state and federal constitutions, however, the ex post facto prohibition applies only to a "law." It is true that the concept of a "law" for purposes of the prohibition is broader than a statute enacted by a legislative body, and may include some administrative regulations. *United States v. Ellen,* 961 F.2d 462, 465 (4th Cir.), *cert. denied,* 506 U.S. 875, 113 S.Ct. 217, 121 L.Ed.2d 155 (1992); *Knox v. Lanham,* 895 F.Supp. 750, 755–756 (D.Md. 1995), *aff'd,* 76 F.3d 377 (4th Cir.1996); *Faruq v. Herndon,* 831 F.Supp. 1262, 1279 (D.Md.1993), *aff'd,* 56 F.3d 60 (4th Cir. 1995).

■ Nevertheless, the ex post facto prohibition does not apply to a "change in guidelines assisting [a government agency] in the exercise of its discretion," *Portley v. Grossman,* 444 U.S. 1311, 1313, 100 S.Ct. 714, 715, 62 L.Ed.2d 723, 725 (1980) (opinion of Circuit Justice Rehnquist denying a stay). This Court, as well as numerous other courts, have taken the position that the ex post facto clauses are inapplicable to "parole guidelines [which] 'do not have the force and effect of law' but are merely 'polic[ies] . . . that show how . . . discretion is likely to be exercised,' " *Gluckstern v. Sutton, supra,* 319 Md. at 672, 574 A.2d at 916, quoting *Dufresne v. Baer,* 744

F.2d 1543, 1550 (11th Cir.1984), *cert. denied,* 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985). *See also Faruq v. Herndon, supra,* 831 F.Supp. at 1279–1280, and cases there collected.

As previously discussed, in *Gluckstern v. Sutton, supra,* we held that a statute requiring gubernatorial approval for parole from the Patuxent Institution could not, under the ex post facto clauses, be retroactively applied to an inmate whose criminal offense occurred before the enactment of the statute. If the General Assembly in 1995 had enacted a statute restricting the Governor's discretion to approve the parole of inmates serving life sentences, and providing that the Governor could only approve the parole of those beyond a certain age or who were terminally ill, the holding in *Gluckstern* would preclude the application of the statute to Lomax. No such statute or regulation, however, has been enacted. The Governor today has the same discretionary authority under the law regarding the parole of persons in Lomax's position as a Governor had in 1969 or 1967.

 The Governor's statement on September 21, 1995, that he would approve paroles for inmates serving life sentences only if the inmates were very old or terminally ill, was simply an announcement of guidelines as to how the Governor would exercise the discretion which he has under the law. The Governor's announcement did not bind him, and he can employ different guidelines whenever he desires to do so. Consequently, the Governor's announcement of " 'polic[ies] . . . that show how . . . discretion is likely to be exercised' " does not constitute a "law" within the meaning of the ex post facto prohibition. *Gluckstern v. Sutton, supra,* 319 Md. at 672, 574 A.2d at 916.

## IV.

 Lomax also complains about the portion of the Governor's September 21, 1995, announcement in which the Governor stated that he had directed the Parole Commission not to recommend to him any paroles for inmates serving life sentences. Lomax contends that, in light of this directive, the

Parole Commission and the Governor have failed to exercise the discretion which the Maryland statutes require that they should exercise.

In several habeas corpus cases filed after the Governor's September 21, 1995, announcement, by inmates serving life imprisonment terms, the Circuit Court for Baltimore City (Rombro, J.), ordered the following:

"1. That the Parole Commission shall resume determining eligibility for parole of Petitioners and other inmates similarly situated;

"2. That the Parole Commission shall forward its recommendations for parole to the Governor as required by statute;

"3. That the Governor shall determine whether to approve the recommendations sent to him as required by statute."

The circuit court held that, although the judiciary cannot tell the Governor how to exercise the discretion which he has under the law, the Parole Commission and the Governor cannot decline to exercise the discretion which the law vests in them. Therefore, the circuit court held, the Parole Commission must apply the statutory factors and continue to make recommendations to the Governor of those inmates sentenced to life imprisonment who are eligible for parole and who in the Commission's judgment should be paroled, and the Governor must act upon each recommendation submitted to him.[2]

---

**2.** The statutory factors which the Parole Commission shall consider are set forth in Code (1999), § 7–305 of the Correctional Services Article which provides as follows:

"Each hearing examiner and commissioner determining whether an inmate is suitable for parole, and the Commission before entering into a predetermined parole release agreement, shall consider:

(1) the circumstances surrounding the crime;

(2) the physical, mental, and moral qualifications of the inmate;

(3) the progress of the inmate during confinement, including the academic progress of the inmate in the mandatory education program required under § 22–102 of the Education Article;

(4) whether there is reasonable probability that the inmate, if released on parole, will remain at liberty without violating the law;

The State did not appeal from the circuit court's decision in the above-mentioned habeas corpus cases. Moreover, in the instant case, the Attorney General has represented to this Court as follows (respondent's brief at 17):

"[T]he Maryland Parole Commission understands and concedes that it has a statutory obligation to submit to the Governor for approval the names of any inmates that the Commission finds suitable for parole, and that statutory obligation cannot be dismissed by the Governor; and ... the Governor cannot direct the Parole Commission to ignore a statutory responsibility. . . ."

The Attorney General has further represented to this Court that, since the above-discussed order of the Circuit Court for Baltimore City, the Parole Commission has made parole recommendations to the Governor with regard to inmates serving terms of life imprisonment (respondent's brief at 21 n. 8). Lomax has not disputed this representation by the Attorney General.

---

(5) whether release of the inmate on parole is compatible with the welfare of society;

(6) an updated victim impact statement or recommendation prepared under § 7–801 of this title;

(7) any recommendation made by the sentencing judge at the time of sentencing;

(8) any information that is presented to a commissioner at a meeting with the victim; and

(9) any testimony presented to the Commission by the victim or the victim's designated representative under § 7–801 of this title."

In the case at bar, Lomax asserts that these statutory factors are also applicable to the Governor's exercise of discretion with regard to the parole of inmates serving life sentences. Nothing in § 7–305 or in any other statute supports this assertion. By its plain language, § 7–305 is applicable only to the Commission, individual commissioners, or hearing examiners appointed by the Secretary of Public Safety and Correctional Services pursuant to § 7–204(b) of the Correctional Services Article. The statutory provision applicable to the Governor's approval, § 7–301(d)(4) of the Correctional Services Article, contains no factors or guidelines for the Governor's exercise of discretion. Accordingly, the Governor is free to employ whatever guidelines he desires in exercising his discretion, except for guidelines that are constitutionally impermissible.

The Court of Special Appeals in the instant case agreed that the Commission and the Governor cannot ignore their statutory responsibilities, and that the Commission must continue to make recommendations concerning those inmates serving life sentences, who are eligible for parole, in accordance with the statutory factors. The Court of Special Appeals concluded (120 Md.App. at 335–336, 707 A.2d at 405):

"Furthermore, the [Governor's] pronouncement has no binding effect on the duties of the Commission. The pronouncement does not, indeed cannot, affect the Commission's responsibilities pursuant to Md.Code, article 41, sections 4–501 et seq. and COMAR 12.08.01.17 § A. These provisions set forth the Commission's powers and duties, including administrative review of the files of prisoners sentenced to life imprisonment, and specific suitability factors the Commission must consider at a parole hearing. *See* Md.Code, Art. 41, § 4–506; COMAR 12.08.01.17 § A(6). While what action the Governor intends to take with respect to any Commission recommendation of parole for a lifer not coming within the terms of the Governor's pronouncement may engender a less than full sense of job satisfaction on the part of a Commission member, the Commission must continue to do what the law directs it to do. Thus, to the extent that the portion of the Governor's pronouncement directing the 'Parole Board not to even recommend—not to even send to [his] desk—a request for parole for murderers or rapists,' suggests that the Commission ignore its legally prescribed duties regarding parole recommendations for lifers, the Commission must ignore that portion of the pronouncement."

■ We agree with the Circuit Court for Baltimore City, the concession by the Attorney General, and the Court of Special Appeals, that the Parole Commission and the Governor must exercise the discretion which the law vests in them. With regard to Lomax, however, the Commission and the Governor did exercise that discretion. The Commission, applying the statutory factors applicable to the Commission's decisions, recommended to the Governor that Lomax be pa-

roled. As earlier noted, *supra* n. 2, the General Assembly has not set forth any factors to guide the Governor's exercise of discretion in approving or disapproving parole recommendations. The Governor, exercising his statutory discretion, declined to approve the Commission's recommendation that Lomax be paroled. Lomax, therefore, received the parole consideration to which he was entitled under the applicable statutes.

We assume that, in the future, Lomax will continue to receive the parole consideration to which he is entitled under the statutory scheme. If he does not, he may, of course, file an appropriate action in court.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.*