877 A.2d 187

Quinton DEMBY, Jesse Baltimore, Kenneth E. Woodall, Daniel Falcone, Earl F. Cox, Jr.

v.

SECRETARY, DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES.

Nos. 1230, 1408, 1490, 1491, 1741 Sept. Term, 2003.

Court of Special Appeals of Maryland.

July 1, 2005.

48

Stephen Z. Meehan (Joseph B. Tetrault, Pauline K. White, Prisoner Rights Information System of Maryland, Inc., on the brief), Chestertown, for appellant.

Michael O. Doyle (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Panel: MURPHY, C.J., KENNEY, SHARER, JJ.

SHARER, J.

In this consolidated appeal from separate inmate grievance proceedings, appellants are inmates committed to the custody of the Commissioner of Correction ("the Commissioner"). Appellee is the Secretary of Public Safety and Correctional Services ("the Secretary").

Appellants allege that, because of amendments to a Division of Correction ("the DOC") regulation, they are unlawfully being denied diminution of confinement credits for double-celling. After pursuing administrative remedies pursuant to the inmate grievance procedure, each appellant petitioned for judicial review by the circuit court for the county in which he was incarcerated.[1] Appellants Quintin Demby, Jesse Baltimore, and Earl F. Cox, Jr. each filed a petition in the Circuit Court for Somerset County. Appellants Kenneth E. Woodall and Daniel Falcone each filed a petition in the Circuit Court for Washington County. The trial courts entered judgment in favor of the Secretary in all five cases.

Appellants then separately filed applications for leave to appeal to this Court. We granted the applications and consolidated the appeals for briefing and argument.[2] We now reverse the judgments of the Circuit Court for Somerset County

---

1. *See* Md.Code, Corr. Serv's. §§ 10–201—10–210 (1999).

2. An additional inmate, John Pappas, was originally involved in this appeal. Pappas had filed a petition for judicial review in the Circuit Court for Washington County. That court consolidated the petitions of Woodall, Falcone, and Pappas and, in a single memorandum opinion, affirmed the Secretary's decisions in all three cases. Pappas then applied for leave to appeal to this Court, and we granted his application, along with those of the other appellants, and consolidated their cases. Prior to the deadline for filing briefs, however, Pappas was released to mandatory supervision. He voluntarily dismissed his appeal, apparently recognizing that his case had become moot. *See* Md. Rule 8–601.

as to appellants Demby and Cox, and the judgments of the Circuit Court for Washington County as to appellants Woodall and Falcone. We remand the cases to the respective courts with instructions to reverse the decisions of the Secretary and remand the cases for further proceedings.

We dismiss appellant Baltimore's appeal as moot. Prior to argument before this Court, Baltimore was released to mandatory supervision. As appellants acknowledge in their reply brief, if they prevail on appeal, "Baltimore [will] have no remedy in damages." To the extent that Baltimore's appeal may present an unresolved issue of important public concern, or may present an issue that is capable of repetition yet evading review in his particular case, we are confident that our determinations as to the remaining four appellants will resolve those issues.[3]

## APPLICABLE STATUTES AND REGULATIONS

The General Assembly has provided that "an inmate committed to the custody of the Commissioner is entitled to a diminution of the inmate's term of confinement as provided under [Title 3, Subtitle 7 of the Correctional Services Article]." Md.Code, Corr. Serv's § 3–702 (1999). With respect to the type of diminution credit involved in this case, the legislature has further provided:

### § 3–707. Same—Special Projects.

· (a) *In general.*—In addition to any other deductions allowed under this subtitle, an inmate may be allowed a deduction of up to 10 days from the inmate's term of confinement for each calendar month during which the inmate manifests satisfactory progress in those special selected work projects or other special programs designated by the Commissioner and approved by the Secretary [of Public Safety and Correctional Services].

---

3. *See* Md. Rule 8–602(a)(10); *Young v. Fauth,* 158 Md.App. 105, 107 n. 1, 111–12, 854 A.2d 293 (2004).

(b) *Method of calculation.*—A deduction described in subsection (a) of this section shall be calculated:

(1) from the first day that the inmate is assigned to the work project or program; and

(2) on a prorated basis for any portion of the calendar month during which the inmate participates in the work project or program.[4]

"The Secretary and Commissioner have designated double celling as a special project by adopting regulations providing that a double celled inmate serving what we shall refer to as an 'eligible sentence' is a special project." *Smith v. State,* 140 Md.App. 445, 453, 780 A.2d 1199 (2001). As originally adopted effective April 1, 1990, former Md. Regs.Code ("COMAR") tit. 12, § 02.06.05 provided in pertinent part:

N. Special Project Credit for Double–Celled Inmates.

(1) Inmates who meet the eligibility criteria in § N(2) are in a special project pursuant to Article 27, § 700(f), Annotated Code of Maryland[5], except inmates who are serving a:

(a) Sentence for murder, rape, sex offenses, child abuse, drug trafficking or distribution, or use of a firearm in the commission of a felony;

(b) Mandatory sentence for the commission of a felony; or

(c) Sentence as a repeat offender under Article 27, § 643B, Annotated Code of Maryland.[6]

(2) Inmates eligible for special project credits under this section are inmates who:

(a) Have agreed to be voluntarily double-celled;

---

4. Md.Code, Corr. Serv's. § 3–707 (1999).

5. Pursuant to the code revision process, § 700(f) of Art. 27 has been repealed and re-enacted as Md.Code, Corr. Serv's. § 3–707 (1999). *See* 1999 Laws of Md., Chapter 54, § 2.

6. Also pursuant to the code revision process, § 643B of Art. 27, which concerned mandatory sentences for violent crimes, has been repealed and re-enacted as Md.Code, Crim. Law, § 14–101 (2002, 2004 Cum. Supp.). *See* 2002 Laws of Md., Chapter 26, § 1.

(b) Are double-celled in an institution which is required by court order to be single-celled or by court order has a population cap and the population cap is exceeded;

(c) Are double-celled in an institution which is not under court order but where the number of double cells exceeds the single-cell design capacity of the institution; or

(d) Are housed in a dormitory or dormitory-type housing and the housing area where the inmates are confined does not provide 55 square feet of living space per inmate exclusive of dayrooms, toilets, and showers.

(3) Inmates who meet the criteria described above shall receive 5 days credit for each calendar month, and on a prorated basis for any portion of a calendar month, beginning on the date and ending on the date the Secretary determines appropriate, based on the demand for inmate housing and services in the Division of Correction.

(4) An inmate may not, under any circumstances, be entitled to earn from all sources, including this regulation, more than the statutory maximum of 15 credit days per month.

(5) The Commissioner shall revoke all special project credits earned under this section if, within 30 days before the inmate's release on mandatory supervision, an inmate is found guilty of an institutional rule violation for:

(a) Assault;

(b) Possession of contraband;

(c) Escape; or

(d) Attempted escape.

\* \* \*

(7) This regulation may not be interpreted, understood or construed to mean that inmates who are eligible to receive the credits described in this section have any right to those credits or that inmates will continue to receive those credits in the future.

17:8 Md. Reg. 972–74 (Apr. 20, 1990). The DOC interpreted the regulation to prohibit any award of double-celling credits

to an inmate if any sentence in his or her term of confinement is ineligible, regardless of whether the inmate's term of confinement also included a non-concurrent eligible sentence.

On September 10, 2001, this Court filed *Smith v. State*, 140 Md.App. 445, 780 A.2d 1199 (2001). In *Smith*, we interpreted former COMAR § 12.02.06.05N and held that,

when an inmate's term of confinement includes both a sentence that is not eligible for the special project credits in question and a consecutive sentence that is eligible for those credits, the two sentences must be considered separately, so that the inmate may reduce his or her term of confinement by earning special project credits against the eligible sentence.

140 Md.App. at 461, 780 A.2d 1199. As a result of *Smith*, the DOC was required to award retroactive double-celling credits to an unknown number of inmates. The appellants in this case were included in that broad sweep.

Effective January 1, 2002, at least in part in response to this Court's opinion in *Smith*, the Commissioner of Correction amended, by "emergency action," the regulations regarding diminution of confinement credits for double-celling. *See* 29:4 Md. Reg. 413–14 (Feb. 22, 2002).[7] Current COMAR § 12.02.06.04F now provides:

F. Special Projects Credit for Housing.

(1) Except as provided in § F(3) of this regulation, an inmate may be awarded special projects credit for housing under Correctional Services Article, § 3–707, Annotated Code of Maryland, if the inmate is:

(a) Assigned to a cell containing two beds and is not serving a period of disciplinary segregation; or

(b) Housed in a dormitory or dormitory-type housing and the housing area where the inmate is confined does not provide 55 square feet of living space per inmate, exclusive of dayrooms, toilets, and showers.

---

7. Even though effective on January 1, 2002, the regulation was not published until February 22, 2002.

(2) An inmate may be awarded a maximum of five special projects credits for housing for each calendar month, and on a prorated basis for any portion of a calendar month, beginning on a date and ending on a date the Secretary determines appropriate, based on the demand for inmate housing and services in the Division, subject to §§ F(3) and G of this regulation.

(3) An inmate may not be awarded special projects credit under this section during the inmate's term of confinement if the inmate is serving a term of confinement that includes a:

(a) Sentence for:

(i) Abduction;

(ii) Arson in the first degree;

(iii) Carjacking or armed carjacking;

(iv) Kidnaping;

(v) Manslaughter, except involuntary manslaughter;

(vi) Mayhem and maiming, as previously proscribed under Article 27, §§ 384–386, Annotated Code of Maryland;

(vii) Murder or attempted murder;

(viii) Use of a handgun in the commission of a felony or other crime of violence;

(ix) Child abuse, abuse or neglect of a vulnerable adult, or child sale, barter, or trade under Criminal Law Article, § 3–601, 3–602, or 3–603, Annotated Code of Maryland;

(x) Assault on a Division inmate or employee under Criminal Law Article, § 3–205, Annotated Code of Maryland;

(xi) A drug crime; or

(xii) [ (a) ] An offense which would cause the offender to be defined as a child sexual offender, offender, sexually violent offender, or sexually violent predator under Criminal Procedure Article, Title 11, Subtitle 7, Annotated Code of Maryland;

(b) Mandatory sentence for the commission of a felony; or

(c) Sentence as a repeat offender under Criminal Law Article, § 14–101, Annotated Code of Maryland.

(4) This section may not be interpreted, understood, or construed to mean that an inmate who is eligible to receive the credits described in this section has a right to these credits or that an inmate will continue to receive these credits in the future.

Relevant to this case, the list of ineligible offenses has been expanded to include, *inter alia,* kidnaping and carjacking.

## FACTS

The four remaining appellants were convicted of offenses that occurred at some point after April 1, 1990. All four were committed to the custody of the Commissioner of Correction prior to September 10, 2001, when this Court decided *Smith.* The appellants are presently incarcerated in various institutions within the DOC. All have apparently been double-celled within the meanings of the former and current regulations.

The complete commitment records of the four appellants are not included in the trial record or the record extract. Appellants inform us in their brief, and the Secretary does not dispute, that Demby, Cox, and Woodall are serving terms of confinement that include both eligible and ineligible sentences under former COMAR § 12.02.06.05N.[8] Falcone's term of confinement apparently did not include an ineligible sentence until January 1, 2002, when the regulation was amended and the list of ineligible offenses was expanded. As of that date,

---

**8.** The Secretary complains that appellants have included in the record extract certain documents regarding their sentences that were submitted to the trial courts but were not presented to the Inmate Grievance Office. The Secretary points out that, in an inmate grievance proceeding, the trial court's review is limited to the record of the proceedings before the Inmate Grievance Office. *See* Md.Code Corr. Serv's. § 10–210(b)(3) (1999). She thus suggests that the trial courts should not have considered the documents in question. The Secretary provides us with no indication that she objected to the documents in any of the trial courts. *See* Md. Rule 8–131(a). In any event, the Secretary does not challenge the accuracy of appellants' representations on appeal as to their sentences.

moreover, another sentence in Woodall's term of confinement became ineligible.

Neither the record nor record extract reflect, and appellants do not inform us of, the particular offenses that underlie Demby's term of confinement. We are told only that during a particular portion of his term of confinement—that is, from January 1, 1992 until June 29, 1998—Demby was *not* serving an ineligible sentence.

Appellants inform us that, in April of 1995, Cox began serving a 15–year sentence for assault with intent to disable and a concurrent five-year sentence for use of a handgun in the commission of a felony. The 15–year sentence was eligible for double-celling credits under the former regulation; the five-year sentence was not. That has not changed with the amendments to the regulation. Thus, since his completion of the five-year sentence for the handgun offense, Cox has been serving a sentence for an eligible offense.

Appellants assert that Woodall's term of confinement includes sentences for theft, possession of a controlled dangerous substance with intent to distribute, robbery with a deadly weapon, and kidnaping. Possession with intent to distribute was the only ineligible offense under former COMAR § 12.02.06.05N. With current COMAR § 12.02.06.04F, kidnaping became ineligible as well. We are unable to decipher the particular dates of Woodall's various sentences.

In May of 1996, Falcone began serving a term of confinement that consisted of a 15–year sentence for robbery with a deadly weapon and a consecutive 20–year sentence, with all but three years suspended, for carjacking. The sentences for both offenses were eligible for double-celling credits under the former regulation. Carjacking became ineligible with the January 1, 2002 amendment.

As we have explained, until September 10, 2001, when this Court filed *Smith*, the DOC interpreted former COMAR § 12.02.06.05N to prohibit any award of double-celling credits to an inmate if any sentence in his or her term of confinement was ineligible, even if the inmate's term of confinement also

included a non-concurrent eligible sentence. Thus, the DOC did not award any double-celling credits to Demby, Cox, or Woodall, but did award credits to Falcone. After *Smith* was decided, the DOC retroactively awarded Demby, Cox, and Woodall double-celling credits for those portions of their terms of confinement when they were serving sentences only for eligible offenses.

The DOC continued to award appellants double-celling credits for such time served until January 1, 2002, when current COMAR § 12.02.06.04F took effect. At that point, the DOC determined that because all four inmates had ineligible sentences in their terms of confinement—albeit, only a newly ineligible sentence in Falcone's case—none of them were entitled to continue earning double-celling credits. The DOC did not rescind any of the double-celling credits already awarded to appellants.

Each of the appellants then separately pursued an inmate grievance in an effort to continue earning double-celling credits beyond January 1, 2002. They argued that, because they had committed their offenses prior to the amendment of the regulation, the application to them of the new language stating that an inmate could not earn double-celling credits for *any* sentence if *one* sentence in his or her term of confinement was ineligible constituted an *ex post facto* violation.[9] Woodall and Falcone also argued that the application to them of the language in the regulation making kidnaping and carjacking ineligible offenses constituted an *ex post facto* violation.

As we have indicated, appellants' arguments were consistently rejected at the administrative level and in the trial courts.

## STANDARD of REVIEW

In appeals from inmate grievance proceedings, "an appellate court reviews the agency decision under the same statutory standards as the circuit court[; thus,] we reevaluate

---

9. *See* U.S. Const., Art. I, § 10; Md. Decl. of Rights, Art. 17.

the decision of the agency, not the lower court." *Watkins v. Sec'y, Dep't of Pub. Safety & Corr. Serv's,* 377 Md. 34, 45–46, 831 A.2d 1079 (2003). We give " 'appropriate deference to the decisions of prison administrators and appropriate recognition to the peculiar and restrictive circumstances of penal confinement.' " *Campbell v. Cushwa,* 133 Md.App. 519, 538, 758 A.2d 616 (2000) (citation omitted). This deference does not extend to cases where the agency has made an error of law, however.

[W]e "may always determine whether the administrative agency made an error of law." ... Typically, such a determination requires considering "(1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." ... Moreover, in cases that involve determining whether a constitutional right has been infringed, we make an independent constitutional appraisal....

*Id.* at 46, 831 A.2d 1079 (citations omitted).

## DISCUSSION

### —*Ex Post Facto Prohibition*—

■ Appellants argue that the application to them of the amended regulation constitutes an *ex post facto* violation. As the Court of Appeals has summarized:

The federal prohibition against *ex post facto* laws can be found in Article I, Section 10 of the Constitution of the United States, which states in relevant part: "No State shall ... pass any ... *ex post facto* Law...." *Ex post facto* laws are also prohibited under Article 17 of the Maryland Declaration of Rights, which states "[t]hat retrospective Laws, punishing acts committed before the existence of such Laws, and by them only incompatible with liberty; wherefore, no *ex post facto* Law ought to be made; nor any retrospective oath or restriction be imposed, or required." Maryland's *ex post facto* clause has been viewed generally to have the "same meaning" as its federal counterpart.

*Watkins,* 377 Md. at 47–48, 831 A.2d 1079.

■ "Although the Latin phrase '*ex post facto*' literally encompasses any law passed 'after the fact,' it has long been

recognized ... that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). This includes " '[e]very law that *changes the punishment* and inflicts a *greater punishment*, than the law annexed to the crime, when committed.' " *Id.* at 42, 110 S.Ct. 2715 (quoting 3 Dall. 386, 390, 1 L.Ed. 648 (1798) (emphasis in original)). It is well settled that "any statute ... which makes more burdensome the punishment for a crime, after its commission, ... is prohibited as *ex post facto.*" *Id.* (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 70 L.Ed. 216 (1925)).

### —*Regulations as Laws*—

 "[I]n the context of the *ex post facto* clause, the 'concept of "law" ... is broader than a statute enacted by a legislative body, and may include some administrative regulations....' " *Watkins*, 377 Md. at 49, 831 A.2d 1079 (quoting *Lomax v. Warden, Maryland Corr. Training Ctr.*, 356 Md. 569, 576, 741 A.2d 476 (1999)). The Supreme Court has long regarded the *ex post facto* prohibition "as reaching every form in which the legislative power of the state is exerted, whether it be a constitution, a constitutional amendment, an enactment of the legislature, a by-law or ordinance of a municipal corporation, or a regulation or order of some other instrumentality of the state exercising delegated legislative authority." *Ross v. Oregon*, 227 U.S. 150, 162–63, 33 S.Ct. 220, 57 L.Ed. 458 (1913).

The Court of Appeals has explained that

whether an administrative provision qualifies as a "law" for *ex post facto* purposes depends in large part on the manner and extent that it limits an agency's discretion. If the provision "do[es] not have the force and effect of law" but simply announces how an agency is likely to exercise its discretion, the *ex post facto* clause does not apply.

*Watkins*, 377 Md. at 49, 831 A.2d 1079 (citation omitted). The Court stated in *Watkins* that the "discretion to which *ex post*

*facto* analysis attaches" is that of the Commissioner and not that of "the individuals carrying out the Commissioner's policies." *Id.* at 52, 831 A.2d 1079.

■■■ Neither the Court of Appeals nor this Court has determined whether former COMAR § 12.02.06.05N was, or whether current COMAR § 12.02.06.04F is, a "law" for purposes of the *ex post facto* clause. Our independent constitutional appraisal convinces us, however, that both the former and the current regulations *are* such laws, and that application of the current regulation to appellants violates the *ex post facto* prohibition.

In *Smith,* 140 Md.App. 445, 780 A.2d 1199, we determined that the DOC was violating its own regulation—and thus was violating the "*Accardi* doctrine"—by interpreting former CO-MAR § 12.02.06.05N to bar awards of double-celling credits to inmates who had any ineligible sentences in their terms of confinement. *Id.* at 455, 780 A.2d 1199 (citing *U.S. ex rel Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954)). In doing so, we "follow[ed] the rule that governs good conduct credits" and held that "when an inmate's term of confinement includes both a sentence that is not eligible for the special project credits in question and a consecutive sentence that is eligible for those credits, the two sentences must be considered separately, so that the inmate may reduce his or her term of confinement by earning special project credits against the eligible sentence." 140 Md.App. at 461, 780 A.2d 1199. *See generally Sec'y of Pub. Safety & Corr. Serv's v. Hutchinson,* 359 Md. 320, 331, 753 A.2d 1024 (2000); *Sec'y, Dep't of Pub. Safety & Corr. Serv's v. Henderson,* 351 Md. 438, 443–44, 718 A.2d 1150 (1998); *Beshears v. Wickes,* 349 Md. 1, 9, 706 A.2d 608 (1998) (all concerning diminution of confinement credits for good conduct).

It was not necessary in *Smith* for this Court to address whether former COMAR § 12.02.06.05N was a "law." We observed, however, that

[t]he DOC established double celling as a special project under the authority of section 3–707 [of the Correctional

Services Article]. Once the special program was created and defined in accordance with section 3–707, it became a legislatively created benefit, albeit one accomplished through the Secretary and Commissioner.

140 Md.App. at 461, 780 A.2d 1199.

In *Knox v. Lanham*, 895 F.Supp. 750 (D.Md.1995), *aff'd sub nom. Worsham v. Lanham*, 76 F.3d 377 (4th Cir.1996), the United States District Court for the District of Maryland was faced with a situation similar to that now before this Court. An inmate committed to the custody of the Commissioner to serve a life sentence challenged a new DOC directive [10] that prohibited inmates serving life sentences from progressing to minimum security or work release status. The inmate argued that the directive was a law and that, when combined with a Maryland Parole Commission policy of refusing to recommend parole for prisoners who were not on work release, it constituted an *ex post facto* violation. The federal court agreed. The court explained:

[T]he new [DOC directive] ... is a "law" for purposes of the Ex Post Facto Clause. First, it is a rule promulgated pursuant to legislatively delegated authority.... Second, the rule is not merely a guide that leaves discretion with classification teams, wardens, or the Parole Commission, in the security classification of lifers. The new [directive] ... may not be "discarded where circumstances require," but is an inflexible rule that a lifer "shall not be reduced below medium security."

*Id.* at 756. *Compare Lomax*, 356 Md. 569, 741 A.2d 476 (where the Court of Appeals held that the Governor's policy of denying parole to inmates serving life sentences was discretionary and was not a law for purposes of *ex post facto* analysis); *Campbell*, 133 Md.App. 519, 758 A.2d 616 (where

---

**10.** DOC directives are institutional regulations that are promulgated by the Commissioner but are not adopted pursuant to the Administrative Procedure Act, *see* Md.Code, state Gov't. §§ 10–101—10–305 (1984, 2004 Repl.Vol.), and are not published in the Code of Maryland Regulations.

this Court did not address whether new DOC directives limiting the ability of inmates serving life sentences to attain a minimum security or work release status were "laws," but held that the directives alone did not constitute *ex post facto* punishment).

In *Watkins*, 377 Md. 34, 831 A.2d 1079, three inmates committed to the custody of the Commissioner of Correction argued that amendments to several DOC directives concerning security classification, work release, and family leave for inmates serving life sentences were laws and violated the *ex post facto* clause. The Court of Appeals rejected the arguments and observed that the legislature has delegated to the Commissioner discretion to "establish policy for guidelines" regarding security, work release, and family leave "without legislative ratification." *Id.* at 52, 831 A.2d 1079. The Court concluded that the directives in question "merely communicate the Commissioner's intended use of discretion, they do not have the 'force and effect of law.' " *Id.* at 51, 831 A.2d 1079.

The Court by no means implied in *Watkins*, however, that the legislature has given the Commissioner discretion to make a prisoner's punishment more burdensome than it was at the time the offense was committed. As we shall discuss in detail, *infra*, the *ex post facto* prohibition is designed to prevent any such action. Indeed, the *Watkins* Court rejected the implicit argument that the challenged amendments to the DOC directives somehow enhanced the inmates' punishments. The Court made clear that the Commissioner may "elect[ ] to change his intentions and discard or alter" the DOC directives, but in no event may he " 'augment [a prisoner's] punishment, either actually or potentially.' " *Id.* (citation omitted).

### —*Application of Amendments as Enhancement of Penalties*—

We are convinced that application of current COMAR § 12.02.06.04F to appellants alters their punishments by increasing the lengths of their sentences. As we have explained, the federal and state prohibitions against *ex post facto* laws apply to " '[e]very law that *changes the punishment* and

inflicts a *greater punishment,* than the law annexed to the crime, when committed.' " *Youngblood,* 497 U.S. at 42, 110 S.Ct. 2715 (citation omitted) (emphasis in original). In the context of this case, the critical question is whether such application "increases the penalty by which a crime is punishable." *California Dep't of Corr. v. Morales,* 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) (regarding statute amending parole procedures). That is, we must look to "whether [the amendment] produces a sufficient risk of increasing the measure of punishment attached to the ... crimes." *Id.* at 509, 115 S.Ct. 1597. A mere "speculative and attenuated possibility of producing the prohibited effect if increasing the measure of punishment" will not rise to the level of an *ex post facto* violation. *Id.*

As the Supreme Court has summarized, "a prisoner's eligibility for reduced imprisonment is a significant factor entering into both the defendant's decision to plea bargain and the judge's calculation of the sentence to be imposed." *Weaver v. Graham,* 450 U.S. 24, 32, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (citing, *inter alia, Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). The Court has further explained that any argument that "rests on the notion that overcrowding-gain time is not 'in some technical sense part of the sentence' ... is foreclosed by [the] precedents" of the Supreme Court. *Lynce v. Mathis,* 519 U.S. 433, 445, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (where the Supreme Court determined that a Florida statute that cancelled provisional release credits already awarded to inmates due to prison overcrowding violated *ex post facto* prohibitions) (quoting *Weaver,* 450 U.S. at 32, 101 S.Ct. 960).

In *Weaver,* the appellant inmate was confined to a Florida institution. He challenged a state statute that reduced the number of good conduct credits that inmates could earn. The appellant argued that, when applied to prisoners such as himself who were serving sentences for crimes committed prior to the statute's enactment, the statute constituted an *ex post facto* violation.

The Supreme Court agreed. It reversed and remanded the case with instructions to the Florida court to "apply, if possible, the law in place when [the appellant's] crime occurred." 450 U.S. at 36 n. 22, 101 S.Ct. 960. The Court stated:

> The critical question is whether the law changes the legal consequences of acts completed before its effective date. In the context of this question, this case can be recast as asking whether [the Florida statute] applies to prisoners convicted for acts committed before the provision's effective date.

*Id.* at 31, 101 S.Ct. 960. The Court answered the question in the affirmative and reasoned:

> For prisoners who committed crimes before its enactment, [the statute] substantially alters the consequences attached to a crime already completed, and therefore changes "the quantum of punishment." ... Therefore, it is a retrospective law which can be constitutionally applied to petitioner only if it is not to his detriment.

*Id.* at 33, 101 S.Ct. 960. The Court determined that application of the new statute to inmates such as the appellant *was* to their detriment. It observed:

> On its face, the statute reduces the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks. By definition, this reduction in gain-time accumulation lengthens the period that someone in [appellant's] position must spend in prison.

*Id.* The Court added: "[T]he new provision constricts the inmate's opportunity to earn early release, and thereby makes more onerous the punishment for crimes committed before its enactment." *Id.* at 35–36, 101 S.Ct. 960.[11]

---

11. In determining that an *ex post facto* violation was committed in *Weaver v. Graham*, 450 U.S. 24, 33–34, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), the Supreme Court looked, *inter alia*, to whether the appellant and other similarly situated inmates were "disadvantaged" by application of the new statute. The Court has since spurned that analysis as unnecessary to its holding in *Weaver*. *See California Dep't of Corr. v.*

■ Former COMAR § 12.02.06.05N(7) provided, and current COMAR § 12.02.06.04F(4) provides, that the regulation "may not be interpreted, understood or construed" to mean that an inmate who is eligible to receive double-celling credits has "any right" to the credits or will "continue to receive [such credits] in the future." The Secretary points to this language as proof that she and the Commissioner retain discretion to terminate the special program as to any inmate at any time. The Supreme Court has pointed out, however, that "[t]he constitutional prohibition against *ex post facto* laws cannot be avoided merely by adding to a law notice that it might be changed." *Miller v. Florida,* 482 U.S. 423, 431, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987). As this Court explained in *Smith,* we will not interpret the language in question as "reserving unlimited authority in the DOC." 140 Md.App. at 462, 780 A.2d 1199.

### —*Conclusion*—

■ To be sure,

the Secretary and Commissioner have authority to abolish, to revoke, or to revise the eligibility standards for double celling. Under section 3–707 [of the Correctional Services Article], they may determine whether any special project credits are available, what projects earn such credits, how may credits may be earned, and who may earn them.

*Id.* at 462, 780 A.2d 1199. We likewise conclude that the regulations adopted by the Commissioner attain the status of laws, for the purpose of our *ex post facto* analysis, by virtue of

---

*Morales,* 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). As we explained *supra,* at 19, the Court now looks to whether the new law "produces a sufficient risk of increasing the measure of punishment...." *See id.* at 509, 115 S.Ct. 1597. The holding of *Weaver,* that a law reducing the number of diminution of confinement credits that an inmate can receive is an *ex post facto* violation if applied to an inmate whose offense was committed before the law was enacted, is nevertheless still valid. See *Lynce v. Mathis,* 519 U.S. 433, 441–46, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) and *Morales,* 514 U.S. at 506–07, 115 S.Ct. 1597 (both discussing *Weaver* ).

the legislative discretion granted to the Secretary and the Commissioner pursuant to Corr. Serv. § 3–707.

With this opinion, we do not suggest that once double-celling credits are established they must remain unchanged and available to all inmates in perpetuity. Clearly, current COMAR § 12.02.06.04F may lawfully be applied to inmates who committed their offenses after it took effect.[12] Nor do we suggest that an inmate who is serving a sentence for an offense that is eligible for double-celling credits may not be removed to a single cell in accordance with DOC policies and regulations.

We hold only that an inmate serving a term of confinement for an offense committed prior to January 1, 2002(i) may not be denied double-celling credits, for periods of time during which he or she was or is serving only an eligible sentence, for the sole reason that another sentence in his or her term of confinement is ineligible, and (ii) may not be denied double-celling credits on sentences for offenses that were eligible under the former regulation but are ineligible under the current regulation. We reverse the judgments of the trial courts and remand all four cases to the respective courts with instructions to reverse the decisions of the Secretary and to remand the cases for further proceedings. The trial courts shall instruct the Secretary to recalculate, under former CO-MAR § 12.02.06.05N, the number of double-celling credits to be awarded to each appellant. The courts shall further instruct the Secretary to conduct those proceedings necessary to facilitate the recalculations.

**JUDGMENTS OF THE CIRCUIT COURT FOR SOMERSET COUNTY IN CASE NOS. 1230 AND 1741 AND**

---

12. Similarly, it appears that if the Commissioner were to amend the regulation to increase the number of double-celling credits that could be awarded, the DOC would not necessarily be required to apply the increase to inmates who committed their offenses prior to the amendment. *See generally Moats v. Scott,* 358 Md. 593, 751 A.2d 462 (2000) (regarding statutory amendment increasing and otherwise altering number of diminution of confinement credits that could be awarded for good conduct).

THE CIRCUIT COURT FOR WASHINGTON COUNTY IN CASE NOS. 1490 AND 1491 REVERSED AND REMANDED WITH INSTRUCTIONS TO REVERSE THE DECISIONS OF THE SECRETARY AND REMAND FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

CASE NO. 1408 DISMISSED AS MOOT.

COSTS TO BE PAID BY APPELLEE.